UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

PETER HAMILTON,                        :
                                       :
                Plaintiff,             :
                                       :
        -against-                      :
                                       :
AQUAVENTURE HOLDINGS LIMITED,          :
ANTHONY IBARGUEN, DEBRA COY,           :
HUGH EVANS, PAUL HANRAHAN, DAVID       :
LINCOLN, CYRIL MEDUÑA, RICHARD F.      :
REILLY, and TIMOTHY WHALL,             :
                                       :
                Defendants.            :

------------------------------------- X

CASE NO.: _____

COMPLAINT

JURY TRIAL DEMANDED

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Peter Hamilton, on behalf of himself by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against AquaVenture Holdings Limited ("AquaVenture" or the "Company") and the members of the Company's executive officers and board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with AquaVenture, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed acquisition by Culligan International Company ("Culligan" or "Parent") and its affiliates (the "Merger").

2.     On December 23, 2019, AquaVenture entered into an Agreement and Plan of Merger (the "Merger Agreement") with Parent and Amberjack Merger Sub Limited ("Merger Sub", a wholly-owned subsidiary of Parent).  Pursuant to the Merger Agreement, Merger Sub will be merged with and into AquaVenture, with AquaVenture continuing as the surviving entity and wholly-owned subsidiary of Parent (the "Proposed Transaction"). Parent and Merger Sub are controlled by Advent International Corporation.

3.     Under the terms of the Merger Agreement, and upon consummation of the Merger, holders of the Company's common stock will be entitled to receive $27.10 in cash per share, without interest (the "Merger Consideration").

4.     On January 27, 2020, in order to convince AquaVenture's public common stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Schedule 14A Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.     In particular, the Proxy contains materially incomplete and misleading information concerning the summary of Citigroup Global Markets, Inc.'s ("Citi") and UBS Securities LLC's ("UBS") financial analyses, used in creating their fairness opinions.

6.     The special meeting of the Company's stockholders to vote on the Proposed Transaction is forthcoming, as the Merger is expected to close in early April 2020. It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the special meeting of AquaVenture stockholders so Plaintiff can properly exercise his corporate voting rights.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to AquaVenture's public common stockholders sufficiently in advance of the special meeting of the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

<u>**JURISDICTION AND VENUE**</u>

7.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, AquaVenture's common shares trade on the New York Stock Exchange ("NYSE"), which is also headquartered in this District. *See, e.g., United States v.*

*Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

<h2 style="text-align:center"><u>PARTIES</u></h2>

10.     Plaintiff is, and has been continuously throughout all times relevant hereto, the holder of AquaVenture common shares.

11.     Defendant AquaVenture Holdings Limited is incorporated under the laws of the British Virgin Islands and claims to have principal executive offices at c/o Conyers Corporate Services (BVI) Limited, Commerce House, Wickhams Cay 1, P.O. Box 3140 Road Town, British Virgin Islands.  AquaVenture's common shares are traded on the NYSE under the ticker symbol "WAAS."

12.     Defendant Douglas Brown is, and has been at all relevant times, the Chairman of the Board and the Company's Founder.

13.     Defendant Anthony Ibarguen is, and has been at all relevant times, the Company's President and Chief Executive Officer.

14.     Defendant Debra Coy is, and has been at all relevant times, a director of the Company.

15.     Defendant Hugh Evans is, and has been at all relevant times, a director of the Company.

16.     Defendant Paul Hanrahan is, and has been at all relevant times, a director of the Company.

17.     Defendant David Lincoln is, and has been at all relevant times, a director of the Company.

18.     Defendant Cyril Meduña is, and has been at all relevant times, a director of the Company, and founder of Advent Morro Equity Partners.

19.     Defendant Richard F. Reilly is, and has been at all relevant times, a director of the Company.

20.     Defendant Timothy Whall is, and has been at all relevant times, a director of the Company.

21.     The defendants identified in paragraphs 12 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with AquaVenture, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

22.     AquaVenture Holdings (NYSE: WAAS) is a multinational provider of water-as-a-service solutions that provide customers a reliable and cost-effective source of clean drinking and processed water primarily under long-term contracts that minimize capital investment by the customer. AquaVenture is comprised of two operating platforms: Quench, a leading provider of filtered water systems and related services with over 155,000 units installed at institutional and commercial customer locations across the U.S. and Canada; and Seven Seas Water, a multinational provider of desalination and wastewater treatment solutions, providing more than 8.5 billion gallons of potable, high-purity industrial grade and ultra-pure water per year to governmental, municipal, industrial and hospitality customers

23.     Culligan was founded in 1936 by Emmett Culligan. Culligan is a world leader in delivering water solutions. The company offers state-of-the-art water filtration and treatment products. Culligan's products include water softeners, drinking water systems, whole-house systems and solutions for businesses. Culligan's network of franchise dealers is the largest in the world, with over 900 dealers in 90 countries.

24.     On December 23, 2019, AquaVenture and Culligan issued a joint press release

announcing the Proposed Transaction, stated in relevant part:

### Culligan and AquaVenture Announce Definitive Merger Agreement

· *Culligan to acquire AquaVenture in an all-cash transaction valued at approximately $1.1 billion*

· *AquaVenture shareholders to receive $27.10 per share in cash*

· *AquaVenture to join Culligan's leading consumer water service and solutions platform as a privately held company*

(Rosemont, IL and Tampa, FL) – Culligan, the innovative brand in consumer-focused and sustainable water solutions and services, and AquaVenture Holdings Limited (NYSE: WAAS) ("AquaVenture"), a leading multinational developer and provider of sustainable Water-as-a-Service® (WAAS®) solutions, today announced they have entered into a definitive agreement under which Culligan will acquire AquaVenture for $27.10 per share in an all-cash transaction valued at approximately $1.1 billion, including AquaVenture's net debt.

AquaVenture has grown to become one of the leading WAAS solution providers in North America, the Caribbean and Latin America. The company offers point-of-use filtered water systems and related services to more than 55,000 institutional and commercial customers across the U.S. and Canada, and desalination and wastewater treatment solutions to governmental, municipal, industrial and hospitality customers throughout the Americas.

The transaction will result in AquaVenture joining Culligan's leading consumer water service and solutions platform as a privately held company. Under Culligan's ownership, AquaVenture will continue its focus on providing world-class service and innovative water treatment solutions for its customers.

"AquaVenture is a leading player in water purification solutions with a strong record of innovation," said Scott Clawson, CEO of Culligan. "We are excited to work with the AquaVenture team and look forward to the many opportunities ahead."

Culligan responsibly provides safe, soft, clean water that improves consumer's health and wellness. The company has set a high standard in the industry for premium drinking water and is a trusted partner to residences, offices, restaurants and industrial facilities throughout the world. Culligan

is a total solutions provider with its complete suite of water filtration systems and treatment solutions. Culligan is owned by Advent International, one of the largest and most experienced global private equity investors.

"We are pleased to reach this agreement to join forces with Culligan and its leading presence in the global water industry, and believe it delivers compelling value to all AquaVenture stakeholders," said Anthony Ibargüen, President and CEO of AquaVenture. "Our leadership team is proud of the development and success of AquaVenture, and excited for what our employees can accomplish in partnership with Culligan in the future".

**Transaction Details**

Under the terms of the agreement, AquaVenture shareholders will receive $27.10 in cash for each ordinary share of AquaVenture they own. The all-cash purchase price represents a premium of approximately 25% to AquaVenture's closing share price on December 20, 2019, and a premium of approximately 33% to AquaVenture's 90-day volume weighted average share price.

Culligan has fully committed debt financing to support the transaction, along with equity financing provided by investment funds affiliated with Advent International. There are no financing contingencies contemplated under the terms of the merger agreement.

The transaction has been unanimously approved by AquaVenture's Board of Directors and is expected to close in early April 2020, subject to AquaVenture shareholder approval, regulatory approvals and the satisfaction of other customary closing conditions.

Upon the completion of the transaction, AquaVenture will become a privately held company, and shares of its common stock will no longer be listed on any public market.

Citi and UBS are serving as financial advisors to AquaVenture. Goodwin Procter LLP is serving as legal advisor to AquaVenture, and Weil, Gotshal & Manges LLP is serving as legal advisor to Culligan.

**The Proxy Omits Material Information**

25.    On January 27, 2020, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it

did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

26.     The Proxy fails to disclose crucial information concerning the summary of Citi's and UBS' financial analyses, used in creating their fairness opinions.

27.     With respect to both Citi's and UBS' analysis of price targets, the Proxy fails to disclose: (i) the actual price targets observed; and (ii) the sources those price targers. *See, e.g. In re Pure Res., Inc. S'holders Litig.*, 808 A.2d 421, 449-450 (Del. Ch. 2002) (emphasizing that "stockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely" and that "[t]he real informative value of the banker's work is not in its bottom-line conclusion, but in the [work] that buttress that result.").

28.     With respect to Citi's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the terminal values; (ii) line items used to calculate unlevered free cash flows; (iii) the inputs and assumptions underlying the discount rate range of 7.5% to 8.6%; (iv) the net debt balance; and (v) the number of ordinary shares outstanding on a fully diluted basis. With respect to Citi's *Illustrative Discounted Cash Flow Impact of Acquisitions Analysis*, the Proxy Statement fails to disclose the projections and assumptions provided by management as used by Citi in the analysis.

29.     Similarly with UBS' *Discounted Cash Flow Analysis* (i) all line items used to calculate unlevered free cash flow; (ii) the individual inputs and assumptions underlying the discount rates ranging between 8.5% and 9.5%; (iii) the terminal values for the Company; and (iv) the net debt and diluted share information used by UBS in the analysis. Also, with respect to respect to UBS' additional discounted cash flow analyses, the Proxy Statement fails to disclose:

(i) the five-year standalone projections for each of the Quench and Seven Seas Water businesses and all underlying line items; and (ii) the individual inputs and assumptions underlying the ranges of perpetuity growth rates of 3.5% to 4.5% and 2.5% to 3.5%.

30.     These key inputs are material to AquaVenture stockholders, and their omission renders the summaries of Citi's and UBS' DCF analyses for AquaVenture incomplete and misleading.  As one highly respected law professor explained regarding these crucial inputs, in a DCF analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).   Without the above-mentioned information, AquaVenture stockholders cannot evaluate for themselves the reliability of the discounted cash flow analyses for AquaVenture, make a meaningful determination of whether the implied equity value per share ranges reflect the true value of AquaVenture or was the result of an unreasonable judgment by the financial advisors, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

31.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming special meeting of the Company's stockholders, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

<u>**COUNT I**</u>

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

32.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

34.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

35.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-

9 if other SEC regulations specifically require disclosure of the omitted information.

36.     Defendants have issued the Proxy with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding the summary of Citi's and UBS' financial analyses, used in creating their fairness opinions.

37.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's common stockholders although they could have done so without extraordinary effort.

38.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Evercore reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Evercore, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up

to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Evercore's analyses in connection with their receipt of the fairness opinions, question Evercore as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

39.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

40.     AquaVenture is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

41.     The misrepresentations and omissions in the Proxy are material to the Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the special meeting of the Company's stockholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to

inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of AquaVenture within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of AquaVenture, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

46.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can the Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and/or permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages.

C.       Directing the Defendants to account to the Plaintiff for all damages suffered as a result of their wrongdoing.

D.       Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.       Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 12, 2020                    **MONTEVERDE & ASSOCIATES PC**
                                            */s/ Juan E. Monteverde*
                                            Juan E. Monteverde (JM-8169)
                                            The Empire State Building
                                            350 Fifth Avenue, Suite 4405
                                            New York, NY 10118
                                            Tel: (212) 971-1341
                                            Fax: (212) 202-7880
                                            Email: jmonteverde@monteverdelaw.com

                                            *Attorneys for Plaintiff*